May it please the court, I'm Paul Gaziano for the Federal Defender Program in Rockford. I represent Karenza Pickering. Ms. Pickering appeals from a finding of contempt for her failure to appear for jury duty about a year ago. After that failure to appear, the government filed a petition for rule to show cause, labeling it a criminal contempt petition. And the matter was set for hearing. At the hearing, Ms. Pickering did stipulate to the operative facts of the petition. In other words, that she had received the notices to appear and that she did not appear. We asked to have her testify, she testified. And what she testified to was her reasons for not appearing. Those reasons included her medical condition, she was at the time of the required appearance, undergoing a very complicated pregnancy, she was on family leave from her employment, and she was also helping to care for her mother who had problems. If she had appeared at the jury veneer, would she have asked to be let off because of her pregnancy? Your Honor, that's a question that I think was addressed in a way by Judge Capalla. He noted that on the notice, there was a procedure that she could have followed to be excused. I believe that cuts both ways. Judge, the district court used it as a method of saying, no, she just ignored the court order. I believe that if she really wanted to get out of duty, with the conditions that she had, she had the perfect reason to pick up the phone or write a letter saying these are my conditions and I would have been excused. I believe that that supports her argument, I did receive the notice, but because of all that was going on in my life, I simply forgot. If she had made that phone call, any court would have let her off, right? I would assume so. Could I ask you a couple of questions? Absolutely, Your Honor. One is about apparently a discrepancy between the oral judgment, which talked about criminal contempt, and the written judgment here, which invokes 28 U.S.C. 1866 G. There is some discussion of that. The judgment, if we look at the judgment, which is document number 11 in the record, I believe that the judgment is labeled a criminal judgment, a judgment in a criminal case. Now it does refer to the 28th 1866, I believe G. I don't think that transforms this, that reference in any way transforms this from a criminal contempt proceeding. I don't see how it could. What happened on the record, orally, was all about criminal contempt, right? That's correct. That's how it was initiated, right? If I could, I'd also like to just ask you one thing that just arose in my mind about courtroom decorum. In this transcript, it looked to me like the district judge was consistently addressing Ms. Pickering, the defendant, by her first name. I don't recall that, but that's not unusual sometimes, Your Honor. In this kind of a situation, I have to say it's troubling to me. I wasn't there, I don't know, but I'm concerned about the ways in which judges can treat people with more or less respect, depending on the circumstances, and that's one way in our culture that we signal respect or disrespect. So that's all I had for you. He certainly did refer to her by her first name. I know that when he gave her her rights to appeal, I believe it was her first name. I didn't notice that it was repeated, Your Honor. I'm sorry for that. I do believe that her conduct was not willful. I believe her conduct was not intended to disregard the orders of the court. We all have events in our lives. I believe the district judge recognized that. We all have events in our lives that cause us to forget, and I've cited two cases in my reply brief which I think address that issue, and that's I believe the Sykes case and the KW case. The Sykes case involved a lawyer who forgot about a trial date, and I believe it was the 11th Circuit, reversed the judgment of contempt. The other case involved a lawyer who was traveling from his home city to the court because of travel plans, not travel plans, because of computer problems or whatever. The plane didn't arrive on time. The court there again reversed a judgment of criminal contempt. So it's not such a Herculean task in contempt proceedings to ask the Court of Appeals to look at this and to enter an order of reversing the contempt. Contempt, as this court recognized in Maltweiler, is a very serious offense, and it affects even young people who are trying to make a headway in the banking profession. She has a judgment of criminal conviction on what she believes and asserts to this court was just a plain lapse of mind. Do you think what happened, Counsel, do you think what happened here is that the judge, among other things, shifted the burden of disproving willfulness to the defendant? You know, that's a possibility, and I've often thought of that, especially when a person is asked to come in and show cause. In other words, it's a criminal proceeding. All of the rights of a criminal person are a criminally accused person attached. But you're asked to come in, and the first thing you have to do is explain yourself. Well, right, and at the top of the hearing, the judge summarizes the reasons why we were all gathered in the courtroom together in the purpose of the proceeding. After the stipulation to the fact of her non-appearance was entered, he says something to the effect of with that stipulation you still want to have a hearing, which suggests to me that there was at least at some level a shifting of the burden of proof to the defense to disprove her willfulness. There was no evidence presented by the government of willfulness. Well, the government presented the stipulation, but there's no further evidence. Well, that's just the fact of her non-appearance. That's correct. That she got the citation to come, and she didn't come. Now, I've thought about that issue. If a person made that same stipulation and just stood moot, I don't know what a trial court would have to do. But she did not stand moot. She got on the witness stand, testified as any other witness, explained her situation, which now the government labels this a credibility and demeanor issue. The judge never found that she was not pregnant, that she did not have a sick mother, and that she was away from work. All those things were accepted. He called her an articulate young lady. He called her an intelligent young lady. But he then concludes she's guilty of contempt. I believe the weight of the evidence suggests otherwise. The explanation is reasonable and excusable. And going back to the original question of the panel, had she picked up the phone, had she really wanted to avoid jury duty, she had all the best excuses in the world, and she knew it. I think that solidifies the fact that she just forgot about it, which is unfortunate. It's unfortunate that we're all here today, but it's a fact. If there are no further questions, I'm done. Okay, thank you, Mr. Gaziano. Mr. McKenzie? May it please the Court. John McKenzie on behalf of the United States. I understand the Court- Why wasn't she cross-examined by the government? There was no additional reason to do so. There was no additional facts- So, in other words, there was no adversary procedure here. That's not true, Your Honor. There was an adversary procedure. The United States brought forth its position. She stipulated those facts. She testified- The stipulation wasn't- The stipulation didn't show any wrongdoing, but a willful criminal violation. That's the only government evidence, is the stipulation. I'm astonished that there was no examination of her. There was no adversary procedure. What gave the judge the idea that she was lying about having forgotten? That had business about how she works for a bank, so she must- I don't know. He didn't remark that. I think he found those facts- What's the evidence? Well, the evidence, Your Honor, is the Court orders her by summons to come in within 30 days. She doesn't reply. She doesn't respond. Yeah, but that's not the issue. The issue is whether there's willfulness here. Now, what's the evidence of willfulness? Well, the second part is within 10 days- Would you answer my question? What is the evidence of willfulness? That is the evidence, Your Honor. If a court orders you to conduct a certain act within 10 days, you don't- Look, people forget things. They make mistakes. My question is, what is the evidence of willfulness that she didn't forget, she knew about it, and rather than asking to be excused, she just willfully refused to appear? Now, what is the evidence of that? Judge, I think the evidence is your order to do twice to do something, and you don't do it. Inferentially, you can say, I don't think you wanted to do that order. I don't think you wanted to comply with my order, and you simply decided not to come in. Let me try again. I'm sorry, Your Honor? Let me try this question again. Yes, sir. Given simply the failure to comply with the order, how does a trier of fact rationally choose beyond a reasonable doubt between willfulness and negligence here? Well, first it has to look at her explanation for it. In Annette's case, we have over nine pages of transcripts and 60 questions and answers from her counselor to herself about her background, about her level of responsibility, about being responsible in the past, about her education, having a degree. Including having shown up for jury duty before. Well, that was in state court. So what? Well, she threw that out that she had done before. So, I'm sorry, I interrupted you. What is the rational basis for choosing beyond a reasonable doubt to say this was willful? That's exactly it. The judge has to make that decision. He has to look at least her circumstances on her behalf, and he did so. He also has to look at the... How could that conceivably be proof beyond a reasonable doubt? Well, I think we have findings of... Look, what would you think of this case? Suppose in the middle of a trial, a judge, the defendant is on the stand, and the judge thinks he's heard the defendant lie. So he says, tells the jury, all right, you go out of the room, and then he holds the defendant in contempt. Right then and there. Because he's heard a lie. And he sentences him. You think that comports with due process? Yes or no? No, Your Honor, I don't think... No? Well, what's the difference? The difference is here. She had notice of the contempt proceeding. She was brought into contempt proceeding. Why is that any different? The judge says, I heard a lie. The evidence was explained to her. Why isn't that stronger than this inference that she couldn't have forgotten it because she works for a bank? She was given the opportunity to have counsel. Why is that different? Well, you asked me whether it would be fair or not. Judge, answer my question. Under your facts, no. I don't have any idea what the facts are. I don't understand you. The judge heard a lie. Right? He's not punishing her for lying. He's punishing her for failing to appear. Look, would you stop changing the subject? If the judge hears what he is convinced is a lie by a witness on his stand, why is that any different from his deciding that she didn't forget? That is, in both cases, you have an inquisitorial procedure, not an adversary procedure, European-style justice, in which a judge, on his own, listening to the one witness, no government presentation, decides that this person has committed a crime. But those aren't the facts in the present case. It wasn't an inquisition. You refuse to answer my question. Why would my case, in which the judge thinks that he's heard a lie by a witness, why is that a weaker case for criminal contempt than our case? Judge, I've never had a district judge do that, so I don't know. Look, you are not answering my question. I didn't ask you whether you'd ever heard a judge do that. I asked you whether, if a judge did that, that would be any less appropriate than what he did here, that is, conducting an inquisitorial proceeding, one side interrogating the defendant. That's how they do it in Europe. But that's not what happened here, Your Honor. I understand the court doesn't like my answer. Yes, of course, it's not what happened. But what do you say? What is wrong with my hypothetical case, given your general approach to these contempt matters? What is wrong with the judge saying, I heard a lie, I'm going to punish the person, sentence the person? Other than lack of due process, I'm not sure what the court is asking for, Your Honor. Are you saying it's the same as Judge Capalla treated this woman? I give up. Yeah, I think it's a substantive question as opposed to what procedures were offered here, but we're not getting very far. If I could ask a systemic question, does the Department of Justice have policies or procedures or criteria for how to evaluate decisions, whether to initiate criminal contempt against juror nonshows? I'm unaware of those, Your Honor. This was the district judge that initiated it, right? The district judge appointed our office or asked our office to become involved. Well, right. Why did you agree to do that? You could have declined, right? We could have. But the district judge could have then sought out a private attorney to be the person who would bring the case. And the private attorney could decline as well because there was no basis for it, right? That's correct. So what evaluative process did your office engage in in deciding to bring this charge at the request of the judge? She was interviewed by a Deputy United States Marshal to determine what we thought her excuse would be, what she would say. Right, but this is not like an excusable neglect kind of standard. You've got to prove willful contempt beyond a reasonable doubt. I understand. So what about the facts of this juror no-show, and this is the substantive question that we've been trying to get at, demonstrates willfulness beyond a reasonable doubt as opposed to neglect that may or may not be excusable, which is not the standard. I don't want to go long. I'm trying to get right to it. But I think in any case where you have a I don't remember or I forgot defense, you're entitled to look at that and determine whether that's a reasonable explanation. And you have to look at a variety of factors. Why isn't it plausible on its face here? In this case, I don't believe it's plausible, or at least the court was well within its discretion to find it implausible. When the court says you've got this contempt or this summons 30 days, within 30 days of the hearing, then you've got another one within 10 days of the hearing, and yet you still claim. That's always the case. It is. So it applies in every single case. What about this specific situation? I mean, you made no argument. You didn't advocate for your case here. You just were extremely passive, brought the charge, and let the judge take it from there. I believe at the time enough evidence was produced. You're just offending the judge. You have no interest in this case. The Department of Justice has no interest in a case like this. Well, this wasn't the only case brought from that particular jurors failing to appear that time. There was another case that was brought, and there were other jurors that didn't show, that the court appointed the U.S. Attorney's Office to look into, that we did not bring charges on. So there was a reasoned basis. So the only one you brought was the one against the woman who was pregnant and taking care of her sick mother, and if she'd made a call, if she'd remembered to make a call, any court would have let her out, right? Can you imagine a trial court that would not excuse this woman? I don't know whether they would have let her out because she would have called the clerk's office, and they may not have felt that they could give her that permission. She says she's on bed rest for her pregnancy? Well, if you look at it, she's really not. What she says is, I have no exertion. Well, it's a high-risk pregnancy at that point, sure. But come on. You say, come back next year, right? That's how you manage this sort of thing in a trial court. Your office really ought to start thinking about common sense, humane approach to cases. Well, we did, Your Honor. We culled out cases that we thought were not appropriate. Getting involved in a case for a three-day sentence or something like that? No, this is the second-best one. Really bad judgment. Okay. Well, if there are no further questions, we'd ask that you affirm the sentence and judgment. Thank you, Mr. McKenzie. Mr. Gaziano, are you with us? No, I'm not. Okay, well, thank you very much, Mr. McKenzie.